ALBANY,.
Feb. 1806.

Woodham
v.
Gelston.

Many respectable writers have thought that an *affirmation* amounted to a warranty. Will not an express promise, that a thing shall be of a certain quality, be equivalent to a warranty? If not so in form, it is in substance, and the defendant should have demurred to the declaration; it is now too late to take advantage of matters of form. The courts in *England* never nonsuit the plaintiff against his consent; nor will this court compel a party to be nonsuited. If the charge of the judge was correct, and the jury have found against that charge, the verdict ought to be set aside, and a new trial granted. If the declaration is defective, an opportunity may be given to the plaintiff to have it amended.

Rule for *new trial* granted.*

## Woodham *against* Gelston.

In an action of trespass against a collector of the customs for seizing and detaining the plaintiff's vessel for a pretended breach of the law of the United States relative to the registering of ships, the vessel having been restored, it was held that the difference between the price at which the vessel

THIS was an action of trespass, for taking and detaining the plaintiff's ship. Plea not guilty. This case was tried at the *New-York* sittings, the 8th *January*, 1805, before Mr. Justice *Livingston.*

On the trial, it appeared that the ship of the plaintiff, had been seized, by order of the defendant, as collector of the customs for the Port of *New-York*, for an alleged breach of the law of the *United States*, entitled, " An Act concerning the registering and recording of ships and vessels." The ship was seized on the 2d *October*, 1801, and remained in custody of the marshall, until the 25th *August*, 1802, when she was restored to the plaintiff. It was proved, that six months before the seizure, the plaintiff purchased the vessel for 12,494 dollars, that on the day

would have sold for, at the time of her seizure, and the price she actually sold for at public auction, immediately after her *restoration,* together with the *actual expenses incurred,* and the *interest* on the amount, constituted a just and proper measure of damages to the plaintiff, as assessed by a jury.

previous to the seizure, the plaintiff contracted to sell her to one *Halsey* for 9,500 dollars, to be paid in three instalments, for which he was to receive notes at 2, 4 and 6 months, and that the execution of this contract was prevented by the seizure. On the 2d *September*, 1802, eight days after the vessel was restored to the plaintiff, she was fairly sold at public auction to the highest bidder for 4,288 dollars. It also appeared that vessels had fallen one third in value, between the time of seizure, and that of the restoration of the ship in question. No evidence was produced, that the plaintiff had any employment for the ship, during the time of her detention, nor what was the rate of demurrage. It was expressly found that the plaintiff was unable to find security sufficient to obtain her liberation.

In his account, presented to the jury, the plaintiff charged the sum of 9,500 dollars, the price offered for the ship, the *interest* on that sum, and the fees paid the marshall, wharfinger, and some other items of expense, and credited the sum for which the vessel sold at auction ; the jury found a verdict for the plaintiff, for the balance as stated, with interest.

The question submitted for the decision of the court, was, whether the rule of damages adopted by the jury was proper. If the court should determine that the rule was incorrect, or that any of the charges were improper, then a new trial was to be granted. It was agreed, however, that any particular items might be deducted from the amount of the verdict, and a judgment given for the balance.

*T. L. Ogden* for the plaintiff. The question is, what is the best rule to be adopted, so as to give the party a just compensation for the damages he has sustained ? There are three modes in which the estimation may be made. 1. The difference between the value of the thing, at the time of the seizure, and at the time of restoration. 2. The amount of what the ship might have earned, in the intermediate time. 3. Demurrage for the period she was detained. The two last are liable to strong objections ; the earnings depend on the nature and manner of employment, and on a

variety of circumstances, which render such a rule too precarious and uncertain to serve for the basis of calculation. *Demurrage* is in the nature of a penalty, and is always more than the damages actually sustained, and can, therefore, afford no criterion for the compensation in this case. The first rule for which the plaintiff contends, is the true .one, since it gives no more than a just compensation ; and, as the party intended to sell the vessel, and not to send her on a voyage, it ought to be adopted. The plaintiff ought not to suffer by the fall of the price of ships in the market, nor ought he to sustain any damages which had arisen, while the ship was in the custody of the marshall. *Trover* might have been brought in this case. *Tinkler* v. *Poole.* 5 *Burrows*, 2657. A re-delivery of the thing does not prevent the claim for damages. *Gilb. Law of Ev.* 260. *Co. Litt.* 257, *a.* The plaintiff is entitled to the same rule of estimating damages in this action, as if *trover* had been brought.

*Harison & Riggs* contra. The seizure by order of the defendant, was made in good faith. He ought not to be made liable for any fall in the market, in the intermediate time. Suppose the price of vessels had risen, would the plaintiff have been satisfied to ·receive the value at the time of seizure ? This shews that the rule proposed, depending on the fluctuation of the market, cannot afford a just criterion of damage ; the sale at auction was in some degree forced ; the price agreed to be paid by *Halsey* might depend on the good or or bad credit of the purchaser, and the risk of eventual payment. The more equitable mode of computing the damage would be to take the earnings of the vessel for the time, and the deterioration she may have suffered during the detention ; these may be easily ascertained by merchants and ship-owners. If the party has not thought proper to bring *trover*, he cannot be entitled to any benefit, that might arise from that form of action. Interest certainly ought not to have been allowed, nor the fees of the marshall, nor wharfage, all of which were taken into the account. If the court can, on legal principles, correct the verdict, they have the power to do so ; but if they

should be of opinion, that those *items* ought not to have been allowed, they must award a new trial.

*Hoffman* in reply. If the solvency of the purchaser was intended to be brought into question, it ought to have been mentioned at the trial, that the plaintiff might have been prepared to repel the objection by proofs. In *trover*, the rule of damages is the value of the thing at the time of conversion. It is absurd to say, that in an action of trespass, where the seizure is alleged to be illegal, the rule of damage should be less favourable to the plaintiff, than in an action of *trover*, where the original taking may have been lawful. In trespass, the plaintiff does not demand merely the value of the thing, but damages also for the unlawful taking; and the illegality of the seizure in the present case, is admitted. The plaintiff ought to be indemnified for what he has lost, in consequence of the seizure; damage and loss are here convertible terms. Interest, as well as the marshall's fees, is a just charge. Nothing is more reasonable, than that a party, who is deprived of the use of his money, by the unlawful conduct of another, should be allowed interest until it is repaid. In no other way will the plaintiff receive an adequate indemnity.

LIVINGSTON, J. delivered the opinion of the court: We are not now to settle a rule of damage, which will be applicable in every action of trespass, but merely, whether the one contended for by the plaintiff be proper, under all the circumstances of this case. We think it is. It is seldom, that the actual injury sustained in consequence of a *tort*, can be ascertained with so much precision. Since it can be so estimated, and the party is willing to adhere to this measure of damage, there can be no reason to prevent his recovery to that extent. The *data*, on which this estimate is formed, are more satisfactory, and leave less to an arbitrary discretion, than any which have been proposed as substitutes. The difference between the price in the first and second sale, both being fair, though some credit was given in the first, and the actual expenses he has incurred, will, with the interest, amount to no more than an indem-

Vol. I.         T

nity to the plaintiff, for the injury resulting from the conduct of the defendant. To such an indemnity, the defendant, who is admitted to be a trespasser, cannot reasonably object. The marshall's fees must now be presumed to have been properly paid; and, if the defendant were liable for them, as was probably the case, since the property was restored, there can be no hardship in refunding them to the plaintiff; at any rate, it might have been shewn to the jury, or stated in the case, that this was a mere voluntary payment, and then a deduction would have been proper. The interest has been objected to, because the jury were not obliged to allow it. If they had a discretion on this subject, it is sufficient; for, as I understand the case, we may allow every *item* which the jury might have given. Two trifling charges for wharfage and ship-keeping must be deducted, as they accrued after the restoration of the vessel. As the calculation stands, the verdict includes a small sum, as compound interest. We are of opinion that this must be deducted, without, however, intending to say, that compound interest can never, in any case, be recovered.

The judgment of the court is, that the two sums above mentioned, amounting to 13 dollars, be deducted, and that simple interest be computed on the balance to the 4th day of *February* term last, and that the verdict be entered for that sum, on which the plaintiff is to have judgment.

Judgment for the plaintiff.